***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act .
2. All parties have been correctly designated and that there is no question as to misjoinder or nonjoinder of parties.
3. The date of the injury by accident is May 25, 1998.
4. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer/employee relationship between the parties, with defendant-employer being self-insured.
5. Plaintiff's average weekly wage at the time of the accident was $416.91, which yields a compensation rate of $277.95.
6. The following exhibits are a part of the evidence of record:
 a. Stipulated Exhibit Number 1, Pre-Trial Agreement
 b. Stipulated Exhibit Number 2, Medical Records
 c. Stipulated Exhibit Number 3, Raleigh Vocational Center, Inc. Vocational Evaluation Discharge Summary
7. The issues before the Commission are whether plaintiff is entitled to an order compelling defendant to provide medical treatment and/or vocational services; whether defendant's Form 24 should have been approved; and whether the medical evidence demonstrates that plaintiff is no longer disabled and that she is capable of returning to work without restrictions.
 *********** *Page 3 
Based upon all the competent evidence of record, the Full Commision makes the following:
 FINDINGS OF FACT
1. Plaintiff began working as a housekeeper for defendant-employer in 1997. She is a native of Egypt where she attended three years of college. Plaintiff testified at the hearing before the Deputy Commissioner through the use of an interpreter.
2. On May 25, 1998, plaintiff struck her left knee and left arm on a nightstand while she was making a bed as part of her duties as a housekeeper for defendant. On that date, plaintiff sustained injuries to her shoulder, back, knee and arm for which defendant accepted compensability by filing a Form 60. Defendant has paid and at the time of the Deputy Commissioner's hearing continued to pay plaintiff weekly temporary total disability benefits at a compensation rate of $277.95.
3. Beginning in August 2000 defendant filed a series of Form 24 Applications to Terminate Payment of Compensation. The applications were based on different grounds: plaintiff's alleged failure to cooperate with vocational rehabilitation efforts, plaintiff's refusal to comply with medical treatment, and because plaintiff had been released without restrictions by Dr. Sanitate. The Form 24's were denied by the Executive Secretary. Defendant appealed the last Form 24 denial and the hearing was held before Deputy Commissioner Griffin.
4. Plaintiff has a lengthy history of medical treatment incurred as a result of her injury by accident. Plaintiff was initially diagnosed with a left knee contusion and left shoulder contusion. After developing back pain, plaintiff was referred to Dr. Jeffrey Kobs, an orthopaedic surgeon. On August 5, 1998, after x-rays of plaintiff's left knee, left shoulder and thoracic spine *Page 4 
revealed no significant abnormalities, Dr. Kobs diagnosed plaintiff with a left AC joint separation, thoracic strain and left knee contusion and referred her to physical therapy.
5. Upon her return visit to Dr. Kobs, plaintiff had only participated in one session of physical therapy. Plaintiff reported significant complaints of pain with movements performed in physical therapy. Dr. Kobs recommended an ultrasound of plaintiff's left shoulder to rule out a possible rotator cuff injury. Both the radiographic and ultrasonographic findings were negative, but plaintiff continued to report significant pain and the inability to abduct her left arm. Dr. Kobs determined that plaintiff's pain representations were out of proportion based on his examination of plaintiff and the negative findings from the diagnostic studies. In his opinion, plaintiff was not a good candidate for ongoing physical therapy because of her lack of compliance during the months that she participated in the sessions. Dr. Kobs stated that typically patients with injuries such as plaintiff's fully recover within three months; the longest period of recovery Dr. Kobs recalled seeing was six months. Dr. Kobs concluded plaintiff was malingering and referred her for a second opinion. Plaintiff then came under the care of Dr. William J. Mallon.
6. During his initial examination of plaintiff, Dr. Mallon indicated that plaintiff elevated her left shoulder to about 90 degrees before she stopped due to pain. Dr. Mallon noted that, "[i]nterestingly while she was demonstrating the things before I asked her do to that, she elevated to about 70 or 80 degrees with no definite evidence of pain." After several examinations of plaintiff, Dr. Mallon released plaintiff and indicated that he had nothing left to offer her for treatment. Dr. Mallon also recommended that plaintiff seek treatment at a pain clinic or with a physiatrist, specifically Dr. Scott Sanitate. *Page 5 
7. In January 1999, plaintiff began treating with Dr. Robert Wilson, a specialist in physical medicine and rehabilitation. Dr. Wilson could not find a neurological injury after reviewing the results of a recent left shoulder MRI scan and the results of electrodiagnostic testing. Dr. Wilson determined plaintiff was magnifying her symptoms of pain. Dr. Wilson provided work restrictions of maximum 25-pound lifting, avoidance of repetitive activities with the left arm, and work limited to 4 hours per day. Dr. Wilson also recommended a comprehensive pain management program, which was denied by Deputy Commissioner Morgan S. Chapman by Order filed April 29, 1999. The Order was not appealed by plaintiff.
8. On June 18, 1999, Dr. Michael Gwinn, a specialist in physical medicine, saw plaintiff for a second opinion evaluation. Dr. Gwinn found it difficult to obtain an accurate range of motion for plaintiff's left arm, but diagnosed a left frozen shoulder. Dr. Gwinn provided plaintiff with sedentary work restrictions of no lifting greater than 15 pounds and working four hours per day. On February 28, 2003, Dr. Gwinn performed an independent medical examination and assigned plaintiff a 5% permanent partial disability rating to the back and a 5% permanent partial disability rating to the left shoulder as a result of her May 25, 1998 compensable injury.
9. Plaintiff has also remained under the care of a family medicine practice. Physician Assistant Melissa Cuneo worked under the supervision of Dr. Corey Musselman and treated plaintiff over the years for her complaints of left shoulder pain. When she last treated plaintiff on February 23, 2006, plaintiff had decreased strength and range of motion in her left shoulder. Ms. Cuneo was of the opinion that plaintiff could work light duty with restrictions of no lifting more than ten pounds occasionally, avoiding repetitive upper extremity (both) arm *Page 6 
activity, avoiding overhead activity, no twisting or bending and alternating between sitting and standing as needed.
10. On February 24, 2005, Dr. Sanitate conducted an independent medical evaluation of plaintiff. Dr. Sanitate reviewed plaintiff's prior medical records and physically examined her left shoulder. Dr. Sanitate noted that plaintiff's passive range of motion of the left shoulder was greater than her active range of motion, meaning that he could passively move her arm in a functional range. If plaintiff had a frozen shoulder, the shoulder would be locked and the passive range of motion would have been equal to the active range of motion. Dr. Sanitate suspected symptom magnification on the part of plaintiff. Dr. Sanitate concluded that plaintiff was physically capable of returning to work full duty without restrictions as of the date of his examination.
11. On February 24, 2006, plaintiff sought medical treatment with Dr. Kurt J. Ehlert, an orthopaedic surgeon. Dr. Ehlert diagnosed plaintiff with a frozen shoulder and recommended an aggressive therapy program.
12. Although Dr. Gwinn diagnosed plaintiff with a frozen shoulder, his subsequent review of Dr. Sanitate's 2005 independent medical evaluation during his deposition raised concerns about the diagnosis. Specifically, Dr. Gwinn noted a "red flag" because there was a difference between plaintiff's passive and active range of motion during Dr. Sanitate's examination. As a result, Dr. Gwinn stated that he would defer to Dr. Sanitate's opinion regarding plaintiff's current ability to return to work.
13. Throughout the course of plaintiff's eight years of medical treatment for her left shoulder, plaintiff has undergone numerous diagnostic testing including MRI scans, x-rays, ultrasound and electrodiagnostic testing, which have revealed no significant abnormalities in the *Page 7 
left shoulder. During the course of her medical treatment, various physicians have noted that her complaints of pain were out of proportion as compared to the objective testing and examinations. The greater weight of the evidence establishes that plaintiff has engaged in symptom magnification and malingering to continue receiving medical treatment and prevent a successful return to work in any capacity. The Full Commission assigns greater weight to the testimony rendered by Dr. Kobs and Dr. Sanitate that plaintiff is capable of performing full duty unrestricted work.
14. After the date of her full duty release without restrictions on February 24, 2005, plaintiff's job search consisted of looking through newspapers and "calling people." She was unable to specify names and places where she sought employment. Therefore, the Commission finds that after February 24, 2005, plaintiff was capable of some work and did not make reasonable efforts to find employment.
15. Plaintiff has failed to establish that she remained disabled within the meaning of the North Carolina Workers' Compensation Act after the date of her full duty release without restrictions on February 24, 2005. Therefore, based on the greater weight of the evidence, defendant is entitled to terminate plaintiff's ongoing compensation, effective February 24, 2005. Defendant is entitled to a credit for compensation paid since that date.
16. As a result of her compensable injury, plaintiff sustained a 5% permanent partial disability rating to her back and a 5% permanent partial disability rating to the left shoulder.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW *Page 8 
1. On appeal to the Full Commission plaintiff argued that the Deputy Commissioner erred by placing the burden on plaintiff to prove continuing disability. Although at the hearing defendant has the burden of going forward to produce evidence to support its Form 24 application, the burden of proving continuing disability remains with plaintiff unless there is a Form 21 Agreement or prior Award of the Commission.Clark v. Wal-Mart, 360 N.C. 41, 619 S.E.2d 491 (2005); Kisiah v. W. R.Kisiah Plumbing, Inc., 124 N.C. App. 72, 476 S.E.2d 434 (1996),disc. review denied, 345 N.C. 343, 483 S.E.2d 169 (1997).
2. Plaintiff also argued to the Full Commission that prior Form 24 denials were res judicata because they were not appealed. However, defendant submitted new documentation with each Form 24. Pursuant to N.C. Gen. Stat. § 97-18.1(d) the rulings on the Form 24's were not binding in subsequent hearings and defendant had the right to a denovo hearing on the Form 24 application before a Deputy Commissioner. Therefore, the doctrines of res judicata and collateral estoppel are inapplicable to the facts of this case.
3. In this case defendant admitted the compensability of plaintiff's injury by accident on May 25, 1998 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff.Sims v. Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277,disc. review denied, 353 N.C. 729, 550 S.E.2d 782 (2001).
4. In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or *Page 9 
mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485
(2001); Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc.,supra.
5. In the instant case, plaintiff was capable of some work and failed to make a reasonable effort to find employment. No doctor took plaintiff out of work and there is no evidence that it would be futile for plaintiff to look for work. Therefore, as of February 24, 2005, plaintiff was no longer disabled and is not entitled to any further total disability compensation. N.C. Gen. Stat. § 97-29.
6. As a result of her compensable injury of May 25, 1998, plaintiff retains a 5% permanent partial disability to her back and a 5% permanent partial disability to the left shoulder. N.C. Gen. Stat. §§ 97-31(23);97-31(13). However, defendant's credit for all indemnity benefits paid to plaintiff after February 24, 2005 shall be applied to payment of plaintiff's ratings. N.C. Gen. Stat. § 97-42.
7. Defendant is entitled to cease payment of temporary total disability compensation to plaintiff effective February 24, 2005. N.C. Gen. Stat. § 97-29. *Page 10 
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD 1. Plaintiff's claim for additional indemnity benefits is HEREBY DENIED.
 2. Defendant may terminate payment of benefits effective February 24, 2005.
 3. Each side shall pay its own costs.
This 1st day of February, 2008.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1